Wright, J.
Counsel for defendant in error, ¥m. Maud, appear to concede that no case is made for specific performance ; and if it were not so, we are at loss to see upon what grounds a judgment of that nature could be based. The alleged contract on which the action is based is quite indefinite, and no land at all is described in it upon which a court could lay hold 'to order a conveyance. This is the contract, as Wm. Maud states it: “We agreed to work altogether, and lay out in land, or the best way we could,, till we all got a farm apiece (John and me), and title to-land to be taken in mother’s name, I believe.” Under such a contract, if proved, it would be difficult for a court to determine what particular farm or tract of land Wm. Maud claimed or was entitled to, and it would be quite as difficult to determine what metes and bounds could be put in a de *149 •cree for specific performance. Ery on Specific Performance, 157.
And, again, in order to authorize specific performance, on the ground that the party asking such performance has ■contributed to the purchase-money, he must show that the amount so contributed was a definitely ascertainable portion, as is held in Reynolds v. Morris, 17 Ohio St. 510. ¥m. Maud’s alleged services can not be considered such definitely ascertainable portion.
Although ¥m. Maud testifies that there was this agreement, he is directly contradicted by his mother and brother John, and, without entering into a discussion as to the weight of evidence, it seems to us that the upshot of the matter is that parents and children all lived together, engaged in earning a common support, and accumulating a common property, with a sort of general understanding that, after the death of the father and mother, the children would succeed to the inheritance as a reward to their joint industry, but without any specific contract even to that effect. But, passing this by, ¥m. Maud, upon his own testimony, ■can not prevail in this action. "We have referred to the agreement which he claims as the foundation of his rights, in regard to which, in cross-examination, he says : “ I supposed I was to get my share of the property at mother’s death, and it would have been so if it had not been for this trouble. She promised to let me have the Johns farm ” (which is the one he now claims) “ after she was dead. She said she wanted the reins in her own hands as long as she lived, and I would have lived according to the contract but for this fuss.”
It is his own sho vying, therefore, that, if he was entitled to .any share, his right to it did not arise till upon his mother’s death. Ilis suit, therefore, is premature.
Nor can it be, as his counsel claim, that, because his mother repudiated the contract, as he claims she did, he can have his action upon the principle that a renunciation of a .contract, before the time for its performance, amounts to a *150 breach, so as to entitle a party to sue by way of anticipation.
The mother has not denied but that the son may be entitled to his share at her death. She only insists, and for the purposes of this suit, that he is not entitled to it now.

Judgment reversed.